Franklin L. Ferguson, Jr., State Bar No. 170875
3580 Wilshire Boulevard, Suite #1732
Los Angeles, CA 90010-2534
(323) 936-4375; (323) 679-1064 (Facsimile)
flfergusonjr@igc.org

**Attorney for Plaintiff, Tanya Denise Smith**

## UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| TANYA DENISE SMITH, an individual,<br><br>               Plaintiff,<br>   v.<br><br>WASTE MANAGEMENT, INC., dba WASTE MANAGEMENT LANDFILL and EL SOBRANTE LANDFILL, a corporation doing business in California; INTERNATIONAL UNION OF OPERATING ENGINEERS LOCAL 12, a collective bargaining unit; and DOES 1-10, inclusive,<br><br>             Defendants. | Case No. CV-17-03043<br><br>**COMPLAINT FOR CIVIL DAMAGES**<br><br>1. **Violation of 42 U.S.C. § 1981, Racial Discrimination in Employment**<br>2. **Violation of 42 U.S.C. § 1981, Employment Retaliation**<br>3. **Violation of 29 U.S.C. § 185 [Labor Management Relations Act, § 301]**<br>4. **Breach of Contract**<br>5. **Breach of the Covenant of Good Faith and Fair Dealing**<br><br>**DEMAND FOR JURY TRIAL** |

## NATURE OF THE ACTION

1.     Plaintiff Tanya Denise Smith brings this action due to the fact that her former employer, Defendant Waste Management, Inc., dba Waste Management Landfill and El Sobrante Landfill (hereinafter, "Waste Management"), Defendant International Union of Operating Engineers Local 12 (hereinafter, "Union"), her former union and a collective bargaining unit, along with  certain of Defendants' respective administrators, supervisors and employees, subjected her to employment discrimination and retaliation, in violation of 42 U.S.C. §1981, breached the collective bargaining agreement (hereinafter, "CBA") and exposed her to a breach of the covenant of good faith and fair dealing. Defendant Waste Management subjected Plaintiff to disparate and adverse conditions of employment on account of her race, her gender and the fact that she engaged in protected activities. Plaintiff exercised her right to formal protest against the discrimination she had suffered, on account of these immutable characteristics. Finally, Defendant Union has failed to adequately represent Plaintiff, in violation of its fiduciary duty towards her, pursuant to §301 of the Labor Management Relations Act.

## JURISDICTION AND VENUE

2.     Defendants' acts and omissions, as more fully alleged herein, violate federal laws. This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343(a) (3) and (4).

3.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 (b) and (e) (1) and (2) in that (1) the unlawful actions challenged herein occurred in the Central District of California; and (2) both named Defendants, as well the vast majority of the pertinent witnesses,  are located within the Central District of California.

4.     Plaintiff asserts that Defendants, by and through their actions as alleged herein, are collectively in violation of 42 U.S.C. §1981, the law that prohibits racial discrimination and retaliation in employment. Plaintiff is informed and believes, and //

**COMPLAINT FOR CIVIL DAMAGES**

thereupon alleges, that because of the facts, conditions, and circumstances set out herein, an actual, justiciable controversy exists between the parties.

THE PARTIES

5.     Plaintiff Tanya Denise Smith is a female, an individual resident of the City of Murietta, within the State of California. At all times relevant to this Complaint for Civil Damages, Ms. Smith was a citizen of the United States. Plaintiff's race is identified as African American, or Black, and Plaintiff was over the age of forty (40) during the occurrence of the operative facts.

6.     Waste Management is a private corporation authorized to do business within the State of California. Waste Management regularly employs five (5) or more persons and is an "employer" within the meaning of California Government Code §12900, *et seq.* and as defined in California Government Code §12926 (c) and in California Labor Code §1101, *et seq.* Waste Management is in the business of sanitation removal and related services. At all times alleged in this Complaint for Civil Damages, Defendant Waste Management acted through its officers, directors, managing agents, servants, supervisory employees and/or representatives.

7.     Defendant Union, at all times germane to this Complaint for Civil Damages, was a labor union, organized for the purpose of serving as an employee bargaining unit, consistent with the provisions of §301 of the Labor Management Relations Act (hereinafter, "LMRA"). At all times alleged in this Complaint for Civil Damages, Defendant Union acted through its officers, directors, managing agents, servants, supervisory employees and/or representatives.

8.     Ms. Smith is ignorant of the true names and capacities of those persons sued herein as "DOES 1 through 10, inclusive," and therefore sues these Defendants by such fictitious names. Ms. Smith will amend this Complaint for Civil Damages to allege these Defendants' true names and capacities if and when they are ascertained. Ms. Smith is informed and believes, and on such basis alleges, that each of the //

3

**COMPLAINT FOR CIVIL DAMAGES**

1  fictitiously named Defendants is responsible in some manner for the occurrences

2  alleged herein and that Ms. Smith's damages were caused by such Defendants.

3      9.      Ms. Smith is informed and believes that, at all times mentioned, each

4  Defendant was the agent, servant, employee, co-venturer, co-conspirator, or

5  representative of each of the remaining Defendants and was, at all times herein

6  mentioned, acting within the course, scope, purpose, consent, knowledge, ratification

7  or authorization of such agency, employment, joint venture or conspiracy.

8                      FACTUAL ALLEGATIONS

9      10.     From July of 2002 through October 21, 2002, Tanya Denise Smith

10  worked at the Labor Ready Temporary Agency. During that timeframe, Ms. Smith

11  was assigned by Labor Ready to Defendant Waste Management's landfill. Defendant

12  Waste Management immediately put Ms. Smith to work as a laborer, on a

13  probationary basis. Ms. Smith's laborer duties included picking up paper litter,

14  cleaning equipment tracks, erecting litter fences and directing vehicular traffic flow.

15      11.     On October 22, 2002, Ms. Smith was hired by Waste Management as a

16  permanent employee. Her formal title was "Labor/Traffic Spotter." On October 28,

17  2002 Ms. Smith was dispatched by Waste Management to the Union facility. Ms.

18  Smith visited the Union location that she might become a Union Member, as well as

19  to sign her Union card. On November 1, 2002, Ms. Smith began paying her Union

20  dues, at the rate of $150.00 per month. Ms. Smith continued to pay these dues,

21  through the increase to $280.00 monthly, in September of 2005. In July of 2007, the

22  Union dues increased again, to $350.00 each month, this time as a consequence of

23  new medical coverage being implemented on behalf of the employees.

24      12.     On November 14, 2003, Ms. Smith complained to Waste Management's

25  supervisory staff about a male crew member exposing his genitals, while he was in

26  the process of urinating onto company equipment. Ms. Smith submitted a second

27  complaint, regarding an independent episode of this same conduct, when it occurred

28  on November 18, 2003.

**COMPLAINT FOR CIVIL DAMAGES**

13.     On November 28, 2003, Ms. Smith lodged yet another complaint, regarding the hostile environment, based upon gender, in which she was working. Ms. Smith specifically objected to the placement of sexually explicit pictures and drawings, which had been placed within the employer's uni-sex, portable toilets. Waste Management took no action, relative to any one of Plaintiff's three (3) November, 2003 complaints. By contrast, in August of 2004, Waste Management's Cindy Burns, Human Resources Director, conducted a major sexual harassment investigation, concerning the alleged actions of a Waste Management Corona Transfer Station roll-off trash truck driver, as reported by Jennifer Anderson, a White Labor Ready employee.

14.     In September of 2004, during the course of Cindy Burns' aforementioned sexual harassment investigation, Ms. Smith was asked whether she had observed independent instances of sexual harassment at the landfill workplace. In response, Ms. Smith informed Ms. Burns that one male co-worker consistently and deliberately touched the nape of Plaintiff's neck, her back and her shoulders. This physical contact occurred while Plaintiff was in the lunchroom and during times when she was within the company's pick-up truck. Ms. Smith indicated that these physical contacts were unwelcomed by her. Plaintiff further reported that she had specifically communicated to the male co-worker her desire to have him cease this conduct.

15.     In response to her complaints, a second meeting occurred between Ms. Smith and Cindy Burns. Operational Manager Craig S. Mitchell was also present during this second meeting. Cindy Burns told Plaintiff to "be a more of a team player," that Plaintiff should get to know her co-workers, including the harasser, on a more "personal" level. Ms. Smith was also specifically advised to be "less aggressive" while in the workplace and to be "more submissive" around her male co-workers. These instructions from a Waste Management agent specifically contradicted business etiquette, common sense and, most importantly, pertinent 9th Circuit anti-discrimination jurisprudence. With these instructions, Ms. Burns re-victimized Ms.

**COMPLAINT FOR CIVIL DAMAGES**

1  Smith.

2      16.    On October 29, 2004, Ms. Smith suffered a workplace accident, when

3  her Waste Management vehicle was struck by a vehicle being operated by an

4  independent employee. The second employee was driving a wheel loader, an item of

5  heavy equipment. Ms. Smith was the only person deemed responsible by Waste

6  Management for the accident, though it was the male wheel loader operator who had

7  improperly failed to yield the right of way. Thirty (30) days later, this same wheel

8  loader operator was terminated, having experienced two (2) separate equipment

9  operating accidents, in addition to this October 29, 2004 incident.

10      17.    In December of 2004, Ms. Smith and co-worker Larry Zavala began to

11  engage in a consensual, romantic relationship. This romantic relationship did not

12  interfere with either person's ability to fulfill his or her Waste Management

13  employment responsibilities. On September 14, 2006, Ms. Smith spoke with Damon

14  Defrates about the opportunity for her to be promoted to a Heavy Equipment Operator

15  Trainee position. On September 21, 2006, Ms. Smith participated in a meeting, along

16  with Craig S. Mitchel, Damon Defrates and Dave Hillyer, to discuss this potential

17  promotion.

18      18.    In April of 2007, Ms. Anita Bonilla, another Waste Management worker,

19  began to car-pool to the workplace with Larry Zavala. Both Ms. Bonilla and Mr.

20  Zavala worked the swing shift, from 11:30 a.m. until 8:00 p.m. During this

21  timeframe, Ms. Smith was assigned to the day shift, where she was busily engaged

22  with training for Heavy Equipment Operation.

23      19.    On June 30, 2007, Ms. Smith prepared a lunch for Mr. Zavala and left it

24  in the kitchen of the work facility. It was Ms. Smith's intention that Mr. Zavala

25  consume the lunch that she had prepared for him. Without Ms. Smith's permission,

26  however, Ms. Bonilla took possession of the lunch and presented it to Mr. T.J. Ford.

27      20.    On July 9, 2007, there was a "near miss," a potential collision between

28  Ms. Kelly Rockwell and Ms. Smith, involving a Volvo dirt hauler. The next day, July

**COMPLAINT FOR CIVIL DAMAGES**

10, 2007, Ms. Smith approached Ms. Rockwell in the lunchroom, advising Ms. Rockwell "to be careful while operating heavy equipment." A verbal dispute between Ms. Rockwell and Ms. Smith ensued, with Operator T.J. Ford ultimately intervening. Following this incident, Ms. Smith and Ms. Rockwell both received a "Last Chance Agreement." Per the terms of this July 10, 2007 Last Chance Agreement, further disturbances involving both Ms. Smith and Ms. Rockwell, were to result in discipline, up to and including termination for either worker.

21. During the month of July, 2007, Ms. Smith became aware of the fact that Mr. Zavala had been entertaining a romantic relationship with Ms. Bonilla, during a timeframe concurrent with his romantic relationship with Ms. Smith. On July 21, 2007, Ms. Smith witnessed Ms. Bonilla and Mr. Zavala leaving the workplace together. Mr. Zavala and Ms. Bonilla were observed by Ms. Smith as they consumed beverages within Mr. Zavala's truck. Ms. Smith approached the couple, learning from Mr. Zavala that he was transporting Ms. Bonilla to her home. Later that day, Ms. Smith met Mr. Zavala at Mr. Zavala's Fontana home and asked that he return to Ms. Smith the copies of Ms. Smith's house keys in his possession.

22. Later during the month of July, 2007, Ms. Smith confronted Mr. Zavala about his relationship with Ms. Bonilla. Mr. Zavala did not deny the fact that he had been maintaining a romantic relationship with Ms. Smith and Ms. Bonilla simultaneously. On July 23, 2007, Ms. Bonilla called Operational Manager Craig Mitchell and falsely accused Ms. Smith of stalking Ms. Bonilla. As a result of these false allegations, on July 24, 2007, a Last Chance Agreement was crafted, implicating both Ms. Smith and Ms. Bonilla.

23. On July 28, 2007, Mr. Zavala requested that Ms. Smith return Mr. Zavala's house keys to Ms. Smith's property to his possession. In support of his request, Mr. Zavala insisted that, at that particular time, he was no longer romantically involved with Ms. Bonilla.

24. In August of 2007, a Defendant Waste Management employee hosted a

7

**COMPLAINT FOR CIVIL DAMAGES**

housewarming party. Ms. Smith, Mr. Zavala and Ms. Bonilla all attended this party. During the party, Ms. Bonilla loudly proclaimed that Mr. Zavala's mother was in possession of an identical dining room table, as compared with the table adorning the party host employee's home. As Ms. Smith prepared to leave the party, Mr. Zavala walked with Ms. Smith to her car. Though Mr. Zavala denied that he was maintaining a romantic relationship with Ms. Bonilla, at least at the time of this party, Ms. Smith indicated that she did not believe his representations.

25.     Later in August of 2007, when Ms. Smith returned to work from a scheduled off-day, she was greeted by Operational Manager Craig S. Mitchell and Equipment Operator Maria Merino. Before Ms Smith even exited her vehicle, Ms. Merino approached and delivered Ms. Smith's house key by hand. Ms. Merino told Ms. Smith that Mr. Zavala had given the keys to her the previous day, asking Ms. Merino to return the keys to Ms. Smith.

26.     Ms. Smith immediately contacted Mr. Zavala at his home. Speaking first to Mr. Zavala, Ms. Smith also talked to Mrs. Julia Zavala, explaining that her husband, Mr. Zavala, had engaged in an extra-marital affair for two and half years. Ms. Smith further explained to Mrs. Julia Zavala that Mr. Zavala was now entertaining a second extra-marital affair, with Ms. Bonilla. Ms. Smith explained to Mrs. Zavala that Mr. Zavala's second affair involved a female co-worker, with whom he was car-pooling, a person with whom he worked the identical shift.

27.     In September of 2007, while Plaintiff was loading her water pool vehicle, Operational Manager Dave Hillyer and Mr. Zavala approached Ms. Smith and asked that she drain the Leachate Condensate water tanks. The two men next proceeded to the Main Office. Within minutes, Dave Hillyer contacted Ms. Smith via two-way radio, instructing her to park her water pool vehicle and report to the Main Office, where she was to meet with District Manager Damon Defrates. When she reported to the Main Office, Damon Defrates informed Ms. Smith that Mr. Zavala had described his romantic relationship with both Ms. Smith and Ms. Bonilla. Ms. Smith

8

**COMPLAINT FOR CIVIL DAMAGES**

specifically informed Mr. Defrates that her personal relationships, including that with Mr. Zavala, were private matters, had no bearing on her work performance at Waste Management and were not properly the subject of Waste Management's managerial discussions.

28.     On November 3, 2007, Ms. Smith returned to the swing shift, working from 11:30 am to 8:00 pm. While gathering litter paper near the lunchroom, Ms. Bonilla apparently noticed that Ms. Smith was herself enjoying a scheduled lunch break. Ms. Bonilla immediately stopped doing her job and followed Ms. Smith into the lunchroom. A conflict ensued between Ms. Smith and Ms. Bonilla. The entire sequence of events was witnessed by Jack Lopez, a Waste Management laborer, who was in the lunchroom at the time.

29.     As an ostensible result of the November 3, 2007 incident, on November 7, 2007 Ms. Smith and Ms. Bonilla were each issued a Last Chance Agreement and Verbal Warning. During the meeting held in discussion of these disciplinary measures, Ms. Cindy Burns directed her critical commentary solely towards Ms. Smith, ignoring evidence of Ms. Bonilla's complicity. Ms. Bonilla, a Latina, is outside of Ms. Smith's protected class of African Americans. This was the second "Last Chance" Agreement implicating both Ms. Smith and Ms. Bonilla.

30.     Due to the approaching Thanksgiving Weekend, Ms. Smith elected to take vacation time from Thursday, November 22, 2007 through Saturday, November 24, 2007. On Monday, November 26, 2007, Ms. Smith called Mr. Zavala's personal cell phone and left a voice-mail message. Ms. Smith's exact words within this voice-mail were, "Look forward to seeing your smile when I return back to work; and I hope that you and your family had a wonderful Thanksgiving Holiday."

31.     On December 3, 2007, Mr. Zavala lost his Lead Operator Status. Throughout the month of December, 2007, Ms. Smith and Mr. Zavala continued their romantic relationship. When Ms. Smith arrived at the workplace on December 28, 2007, her employment was terminated. During the termination meeting, present were

9

**COMPLAINT FOR CIVIL DAMAGES**

Human Resources representative Cindy Burns, District Manager Damon Defrates and Union Steward John Capistrano. Through these agents, Defendant Waste Management alleged that Ms. Smith had somehow violated her July 24, 2007 Last Chance Agreement.

32. Commensurate with her termination, Ms. Smith received her final pay check, as well as monies which represented her outstanding vacation hours. Ms. Smith received no written notice of her termination on December 28, 2007; she was given only verbal notification. On December 28, 2007, Ms. Smith was informed that a formal letter, detailing the rationale for her termination, would be sent to her Union representatives.

33. Upon learning of her termination, Ms. Smith immediately attempted to contact her Union business agent, Mr. Anthony Madrid, leaving a December 28, 2007 voice-mail message. She questioned Mr. Madrid regarding the date that she would receive her letter of termination, asked him to detail the procedural requirements for filing a Union grievance and requested to know the date that she would receive compensation for her unpaid sick time.

34. On December 29, 2007 Mr. Madrid returned Ms. Smith's phone call, admitted that he was aware of the fact of Ms. Smith's termination and revealed that he had informed Mr. Defrates to "fire people," Union employees, who experience "personal problems at the Landfill." Ms. Smith communicated to Mr. Madrid her desire to file a grievance but was specifically informed that she would have to wait until Waste Management transmitted her formal termination letter to the Union, ostensibly via facsimile. At the time of her termination, Plaintiff's Union rights had vested: Plaintiff was entitled to Union benefits, including health insurance, retirement pension and reinstatement privileges.

35. On January 2, 2008 and January 3, 2008, Ms. Smith called Mr. Madrid, intent upon learning the rationale for her termination from Waste Management. Receiving no response, on January 4, 2008 Ms. Smith traveled to the Union's

**COMPLAINT FOR CIVIL DAMAGES**

Redlands office. At the Union office, Ms. Smith reviewed original facsimiles, dated January 2, 2008 and time stamped 6:40 p.m. According to this correspondence, Ms. Smith was terminated because she allegedly violated the Last Chance agreement dated July 24, 2007. Contrary to the July 24, 2007 Last Chance Agreement, however, Ms. Bonilla was not terminated. The alleged violation consisted of the voice mail message that Ms. Smith left for Mr. Zavala, on his personal cell phone, on November 26, 2007. Ms. Cindy Burns had allegedly learned of the voice-mail message from Ms. Bonilla and Mr. Zavala.

36.     Speaking for the Union, during this January 4, 2008 meeting, Mr. Madrid refused to represent Ms. Smith, relative to the termination. Instead, Mr. Madrid recommended that Ms. Smith retain an attorney. Mr. Madrid cited "personal reasons" and Ms. Smith's allegedly "poor people skills." Mr. Madrid refused to instigate an investigation. Ms. Smith had been the object of no formal, independent complaint. Mr. Madrid informed Ms. Smith that "sexual harassment issues" were "out of [his] league," refusing to represent Ms. Smith. In response, Ms. Smith informed Mr. Madrid that such a decision was the essence of an unfair practice by him, the Union and Waste Management. Similarly situated Union employees, outside of Ms. Smith's class of African Americans, were not subjected to such refusals to fulfil the representation obligation delineated within the CBA.

37.     On January 7, 2008 and January 9, 2008, Ms. Smith spoke with Mr. Madrid regarding her unpaid sick time. Mr. Madrid claimed that the Union contract was "unclear" relative to compensation for unused sick time. On January 10, 2008 Ms. Smith was advised that she should insist upon the Union's filing of a grievance, on her behalf. In response, Ms. Smith informed Mr. Madrid that such a decision was the essence of an unfair CBA practice by him, Defendant Union and Defendant Waste Management. Ms. Smith also informed Mr. Madrid that he had "spearheaded" Defendant Union's past efforts to represent other terminated Waste Management employees. These employees, including Pete Botello, a male Latino, Ryan Riggs

11

**COMPLAINT FOR CIVIL DAMAGES**

White male and Anita Bonilla, a female Latina, each was the beneficiary of a swift, positive resolution of their respective grievances. Each of these employees received monetary compensation and even reinstatement to their pre-termination position.

38.     Ms. Smith grieved her termination on January 11, 2008. No settlement overtures had been made by Waste Management. Ms. Smith had received only one written notice, dated July 24, 2007, and had received no Union representation. Until January 4, 2008, Ms. Smith was never informed regarding the manner in which she had allegedly violated the July 24, 2007 Last Chance Agreement. Ms. Smith further grieved the fact that she had not been paid "waiting time" as per Defendant Union's contract with Defendant Waste Management. At the time of her grievance, Ms. Smith was owed fourteen (14) days of "straight time" pay, at the rate of $16.78 per hour.

39.     Defendant Waste Management responded to Ms. Smith's January 11, 2008 grievance on January 16, 2008. Waste Management simply argued that her grievance had been filed untimely and refused to reinstate Ms. Smith to her previous position.

40.     Ms. Smith timely satisfied the administrative pre-requisite to litigation when, on September 8, 2008, she filed Equal Employment Opportunities Commission ("EEOC") charge #480-2008-04430 (*Smith v. Waste Management DBA ElSobrante Landfill*) and EEOC charge #480-2008-04447 (*Smith v. International Union of Operating Engineers, Local#12*).

41.     On September 30, 2010, the EEOC issued "Right to Sue" letters, relative to both charge numbers. On December 30, 2010, Ms. Smith filed a civil law suit in Riverside County. The case was assigned Superior Court of California, Case # RIC 10024986.

42.     On April 22, 2011 Ms. Smith received a sexually explicit text from Operational Manager Craig S. Mitchell. Mr. Mitchell sent the text with his Waste Management Corporate issued cell-phone. Mr. Mitchell texted a picture of his genitals to Ms. Smith's cell-phone. Believing that Defendant Waste Management had

**COMPLAINT FOR CIVIL DAMAGES**

condoned and ratified Mr. Mitchell's behavior, on May 5, 2011 Ms. Smith filed an amended administrative complaint, adding three individual defendants, Cindy Burns, Damon Defrates and Anthony Madrid.

43.     Plaintiff alleged causes of action for breach of contract and breach of the CBA against Defendant Waste Management and Defendant Union. On May 5, 2011, Plaintiff filed an Amended Complaint, adding individual Defendants Damon Defrates, Cindy Burns, and Anthony Madrid as well as a claim styled as "violation of civil rights." Plaintiff filed these claims using a form complaint approved by the Judicial Council of California.

44.     On May 31, 2011, Defendant Union timely removed the case to the United States District Court on the basis of federal question jurisdiction under 28 U.S.C. 1441. On June 3, 2011, the case, which was initially assigned to Judge Virginia Phillips, was reassigned to Judge Stephen V. Wilson, case number CV11-842-SVW (OPx). On June 7, 2011, Defendants Waste Management and Cindy Burns filed separate Motions to Dismiss. On June 14, 2011, Defendants Union and Anthony Madrid filed a joint Motion to Dismiss. On September 15, 2011, Defendants' Motions to Dismiss were granted, without prejudice. In addition, Plaintiff's request for leave to add a Defendant was dismissed as moot.

45.     At all times since joining Defendant Union as a member and even after her December 28, 2007 termination, Plaintiff has faithfully paid her Union dues. Plaintiff has continued to be a member of the Union, despite the termination of her Waste Management employment. As a consequence of paying these dues and adhering to all of her Union responsibilities, in January of 2013, Plaintiff's name was placed on a Waste Management "to be hired" list. These lists were generated as part of the CBA between Waste Management and the Union.

46.     According to the terms of the CBA, Plaintiff was to be called for a Waste Management job assignment, irrespective of the fact that she had been previously terminated, once a position suiting her qualifications became available. In May of

**COMPLAINT FOR CIVIL DAMAGES**

2013, Plaintiff's name appeared on pertinent "to be hired" lists, including the equipment operator list and the laborer hiring list.

47.     Defendant Union called Plaintiff on July 23, 2013, instructing her to come to Redlands Union Hall, retrieve a "dispatch ticket" and report to the Waste Management facility on July 24, 2013. Plaintiff was elated at the prospect of returning back to a position of employment with Defendant Waste Management. Though the laborer/spotter position bore a lower pay scale, being distinct from the responsibilities of an equipment operator, Plaintiff relished the opportunity to be re-hired.

48.     On July 25, 2013, Plaintiff arrived at Defendant Waste Management's facilities, prepared to work. Plaintiff met the new operational manager, Rob Fadden. Mr. Fadden had assumed responsibility for Operational Management, in the wake of Craig S. Mitchell's termination, on August 1, 2011.[1]

49.     Mr. Fadden asked Plaintiff to take a seat in the employee break trailer, while he completed a particular task. Mr. Fadden eventually retrieved Plaintiff from the lunch area, proceeded to lead Plaintiff on a tour of the job site in his company pickup truck. During the tour, Plaintiff detailed her experience as both equipment operator and laborer/spotter. Mr. Fadden expressed elation with respect to Plaintiff's actual Waste Management experiences. The two discussed the fact that Plaintiff also lived only (ten) 10 miles from the job site.

50.     Mr. Fadden welcomed Plaintiff to Waste Management as a laborer/spotter. Plaintiff was formally offered employment. The offer was conditioned only upon Ms. Smith's successful passage of a pre-employment drug test. The tour concluded, Mr. Fadden asked Plaintiff to return to the break trailer. Mr. Fadden related that he would make contact with the company Human Resources representative, Cindy Burns.

_____

[1] Mr. Mitchell was terminated two (2) weeks after meeting with Defendant Waste Management lawyers concerning an explicit cell phone photograph.

**COMPLAINT FOR CIVIL DAMAGES**

51.     Upon Mr. Fadden's return to the break trailer, Mr. Fadden asked Plaintiff to "step out of the lunchroom." At this juncture, Mr. Fadden's facial expression had been severely altered. Mr. Fadden ceased communicating with Plaintiff. Mr. Fadden only directed Plaintiff to retrieve all of her personal belongings. Mr. Fadden next indicated that Plaintiff's services would not be needed. According to Mr. Fadden, Ms. Burns decided to reject the Plaintiff's Waste Management rehire, rescinding the offer of employment.

52.     On August 13, 2013, Defendant Union called Plaintiff to report to Waste Management, summoning her with a second dispatch report slip. Plaintiff was deemed qualified as a laborer/spotter. Plaintiff dutifully reported Defendant Waste Management's facilities. When she reported to the front office, District Manager Mike Ghost informed Plaintiff that her name had been placed upon a "no rehire" list for Defendant Waste Management. As she returned to her vehicle, Plaintiff questioned the motivation supporting the decision to place her on this purported "no rehire" list. From the December 28, 2007 termination until she responded to the August 13, 2013 dispatch report slip, no language previously supplied by either the Union or Waste Management had ever indicated that Plaintiff was not eligible to return to work at Waste Management.

53.     Over the course of the past ten (10) years, there have been a number of similarly situated employees, outside of Plaintiff's class, who have also been terminated. Each of these employees, unlike Plaintiff, has been the subject of a Union sponsored grievance and has been rehired by Waste Management. The distinction between the rehired Union workers and Plaintiff has been race. Relative to each instance of re-hiring, the Union has advocated on behalf of the Union member, insisting upon the application of the CBA, relative to reinstatement.

//

//

//

**COMPLAINT FOR CIVIL DAMAGES**

## FIRST CAUSE OF ACTION FOR DISCRIMINATION IN VIOLATION OF 42 U.S.C. § 1981

### (By Plaintiff against Defendants Waste Management and Union)

54.     Ms. Smith repeats and realleges the allegations contained in paragraphs 1 through 53, inclusive, as if fully set forth herein.

55.     As a direct and legal result of the conduct of Defendants and each of them as set forth above, Ms. Smith has suffered special damages for lost earnings and sums due pursuant to the aforescribed adverse employment consequences, in an amount not yet fully known. In addition, Ms. Smith suffered and will continue to suffer special damages, in an amount not yet ascertained, for emotional, physical and psychological injuries he suffered as a direct and legal result of the conduct of Defendants, all as set forth above. Ms. Smith has also suffered consequential economic injury in an amount not yet ascertained, as a direct and legal result of the conduct of Defendants, all as set forth above.

56.     According to 42 U.S.C. § 1981, "all persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other."

57.     As a result of the conduct described above, Plaintiff was deprived of her right to make and enforce employment contracts, free from discrimination. Specifically, Plaintiff was not allowed to participate in the contractually defined re-hire process, because of the discrimination promulgated by Waste Management and the Union.

58.     As a direct and legal result of the conduct of Defendants as set forth above, Ms. Smith suffered general damages including but not limited to economic

**COMPLAINT FOR CIVIL DAMAGES**

injury, damage to Ms. Smith' reputation, pain and suffering, humiliation, embarrassment, and grievous emotional, physical and psychological injury.

59.     Defendants, by their actions as set forth above, have engaged in despicable conduct, exposing Ms. Smith to cruel and unjust hardship, with the intention to cause injury to Ms. Smith and with conscious disregard of her rights. Defendants occupied a position of trust which gave them power to damage Ms. Smith' ability to earn her livelihood. Defendants abused that position of trust by maliciously, fraudulently and oppressively subjecting Ms. Smith to the circumstances aforescribed. Ms. Smith is therefore entitled to punitive damages, in an amount to be pleaded and proven at trial. Ms. Smith has been compelled to seek legal services to redress the discriminatory actions taken by Defendants and, therefore, seeks reasonable attorneys' fees in an amount according to proof at trial, pursuant to 42 U.S.C. §1988.

60.     As a direct and proximate result of Defendant's acts and omissions as described above, Ms. Smith has suffered and continues to suffer damages, according to proof at trial.

## SECOND CAUSE OF ACTION FOR RETALIATION IN VIOLATION OF 42 U.S.C. § 1981

### (By Plaintiff against Defendants Waste Management and Union)

61.     Ms. Smith repeats and realleges the allegations contained in paragraphs 1 through 60, inclusive, as if fully set forth herein.

62.     By exercising her right to protest discrimination, via her filing of a formal lawsuit, in addition to administrative complaints, Plaintiff engaged in activities which are protected by Title VII of the Civil Rights Act of 1964. Defendants' collective decision to subject Plaintiff to the series of adverse employment consequences articulated above, as well as their subsequent acts in furtherance of that decision, all as a consequence of said engagement, constitutes retaliation, contrary to 42 U.S.C. § 1981.

**COMPLAINT FOR CIVIL DAMAGES**

63.     As a direct and proximate result of Defendants' acts and omissions as described above, Ms. Smith has suffered and continues to suffer damages, according to proof at trial.

### THIRD CAUSE OF ACTION FOR VIOLATION OF 29 U.S.C. § 185 [LABOR MANAGEMENT RELATIONS ACT, § 301]

### (By Plaintiff Against Defendant Union)

64.     Ms. Smith repeats and realleges the allegations contained in paragraphs 1 through 60, inclusive, as if fully set forth herein.

65.     Union is the exclusive collective bargaining representative of Waste Management's employees, including Plaintiff. Union had a duty to fairly represent all workers with respect to processing grievances arising under the labor agreement. Plaintiff was a dues paying member for over eleven (11) years. Under the terms of the collective bargaining agreement, Plaintiff had a right to be re-hired, once her name was placed on the re-hire list, a position became available and her turn was due. Defendants refused to rehire Plaintiff twice in 2013, though she was on the re-hire list, her turn had become due and positions for which she was qualified had become available.

66.     Plaintiff's attempts to grieve her termination were thwarted by the Union, the result of an outright refusal to prosecute a grievance on her behalf. Because the persons responsible for the refusal to prosecute the termination grievance were also responsible for the decision to dishonor the collective bargaining agreement, relative to re-hire, Defendants' actions rendered futile Plaintiff's potential resort to the grievance process.

67.     As a direct and legal result of the acts and omissions of Defendants, and each of them, Plaintiff has suffered damages, including, without limitation, loss of enjoyment of life, pain and suffering, emotional distress, medical expenses, attorneys' fees, costs of suit and other pecuniary losses not yet ascertained.

//

18

**COMPLAINT FOR CIVIL DAMAGES**

## FOURTH CAUSE OF ACTION FOR BREACH OF AN
## IMPLIED-IN-FACT CONTRACT OF EMPLOYMENT

### (By Plaintiff against Defendants Waste Management and Union)

68.     Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 60, inclusive, as if fully set forth herein.

69.     Plaintiff consistently performed the duties and responsibilities of her work assignments and her Union obligations in an excellent manner and relied upon Defendants' policies and procedures, regarding the terms and conditions of her employment, including the re-hiring process. Based upon these documents, Plaintiff reasonably concluded that she had entered into an implied-in-fact, non-integrated contract with said Defendants. The terms of this implied-in-fact contract included the re-hiring process.

70.     At all times mentioned herein, Plaintiff fulfilled her duties and conditions precedent under this implied-in-fact contract with Defendants and remains ready, willing and able to continue performing same in a competent and satisfactory manner. Notwithstanding this satisfactory performance, each Defendant, by engaging in the behavior described above, has breached the terms of its non-integrated, implied-in-fact employment contract with Plaintiff, via violation of its own policies and procedures. Defendants so acted for the express purposes of depriving Plaintiff of her right to compensation under said implied-in-fact contract, as well as to promulgate acts of retaliation against Plaintiff.

71.     As a direct and proximate result of Defendants' acts and omissions as described above, Plaintiff has suffered and continues to suffer damages, according to proof at trial.

//
//
//
//

19

**COMPLAINT FOR CIVIL DAMAGES**

## FIFTH CAUSE OF ACTION FOR BREACH OF THE
## COVENANT OF GOOD FAITH AND FAIR DEALING
### (By Plaintiff against Defendants Waste Management and Union)

72.     Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 60, inclusive, as if fully set forth herein.

73.     Defendants, pursuant to the implied-in-fact contract described above, and the implied-at-law covenant of good faith and fair dealing, were obligated to perform the terms and conditions of the implied-in-fact contract fairly and in good faith. Defendants were also required to refrain from doing any act that would prevent or impede Plaintiff from performing any and all of the conditions of the implied-in-fact contract that she agreed to perform. Finally, Defendants were prohibited from engaging in any act that would deprive Plaintiff of the benefits of the implied-in-fact contract, including the collective bargaining agreement.

74.     By their acts and omissions as described above, Defendants demonstrated bad faith, extraneous to the implied-in-fact contract, with the intent to frustrate Plaintiff's enjoyment of her implied-in-fact contract rights. Defendants' bad faith is clearly demonstrated via deliberate violations of their own policy and procedural dictates. Specifically, Defendants had no probable cause to engage in the discriminatory and retaliatory acts against Plaintiff, particularly with respect to the adverse employment consequence to which he was subjected, including discriminatory exclusion with respect to the re-hiring process.

75.     As a direct and proximate result of Defendants' acts and omissions as described above, Plaintiff has suffered and continues to suffer damages, according to proof at trial.

### REQUEST FOR RELIEF

76.     WHEREFORE, Ms. Smith respectfully requests that judgment enter in favor of Ms. Smith and against Defendants and each of them as follows:

a.     On all claims, for general and special damages according to proof;

20

**COMPLAINT FOR CIVIL DAMAGES**

b.    On all claims, for exemplary and punitive damages according to proof;

c.    On all claims, for costs, interest and reasonable attorney's fees;

d.    On all claims for violation of 42 U.S.C. §1981, Plaintiff requests that this Court award monetary damages via 42 U.S.C. §1988, injunctive relief, and other appropriate equitable relief to protect the peaceable exercise or enjoyment of the right or rights secured.

e.    For such other relief as is just and proper.

## DEMAND FOR JURY TRIAL

77.    Trial by jury is hereby demanded for determination of all issues.

**Dated: April 22, 2017**

**Respectfully Submitted**

**By_____**
**Franklin L. Ferguson, Jr.,**
**Attorney for Plaintiff, Tanya Smith**

---

21

**COMPLAINT FOR CIVIL DAMAGES**